May it please the Court, my name is Jia Kim, appearing on behalf of Appellant Feng Xian. I'd like to reserve two minutes of my time for rebuttal. The probable cause showing to justify the search of Mr. Xian's rented room boiled down to three things. First, his suspected involvement in a single fraudulent credit card transaction at Ralph's Supermarket. Second, the array of credit cards seen on the floor of that rented room. And third, the embossing machine, the credit card embossing machine, spotted by Detective Early during the first of his four warrantless searches of the room. In this instance, when he ordered Mr. Xian to move his dog, the District Court properly excised the observation of the embossing machine from the search warrant affidavit as the product of an unconstitutional search. However, it erroneously concluded that the first two factors in themselves provided sufficient probable cause to search the room and to believe that evidence of credit card manufacturing would be found inside that room. For this reason, the Court should reverse. Without the embossing machine, there simply isn't what this Court has called the reasonable nexus between the contraband sought and the place to be searched. And both this Court and the Supreme Court have emphasized that it's not enough that the owner of the house, or in this case the renter of the room, is suspected of a crime and we haven't challenged the probable cause to arrest Mr. Xian outside in the hallway. However, there must be some link to the site itself. And without the embossing machine, this nexus falls apart. What's your best case for that? Because it seems that the detective had a sufficient amount of information in that he knew that this individual had been using, or was trying to use a fraudulent credit card that it was, I mean he verified that with the credit card company in the store. They had a picture of him from the store. I guess I'm just trying to figure out, and I think there were a couple other items as well, just trying to figure out what more would they have needed. You're saying that they needed the embossing machine, but what's your best case on that? I think each case is obviously very fact-specific, but I would compare this to an out-of-circuit case started by the government, U.S. v. Carney, which is a counterfeit currency case. And in that case, the court said that there was, in that case the defendant had passed counterfeit bills on multiple occasions. And the court there said that, yes, this provided probable cause that that defendant was not only passing counterfeit bills, but also producing them, or might have more counterfeit bills in his possession, and that it would be a far different scenario if he had been a one-time passer of a bill. And I think without the embossing machine- Well, but here this is distinguished, though, because he saw this pile of credit cards when the door opened when he was there legitimately. I mean, I think at some point there could be characteristics of those cards that would rise to the level of probable cause. However, I think what he said, an array of credit cards in themselves isn't enough. If he had said piles or stacks of credit cards or stacks of blanks, I think that would have been probable cause. As in Holtzman, another credit card fraud case from this circuit, in that case the defendant's, the co-defendant was already implicated in a credit card fraud scheme, and the investigating officer, upon doing surveillance, saw Holtzman himself found on his person at the time of arrest credit cards in different names. And that, again, is a highly suspicious circumstance. But I think just having an array or ten credit cards in and of themselves when the defendant voluntarily opens the door knowing the police is there isn't sufficient for probable cause. Well, say somebody's suspected of using a drug and the officer comes to, I mean, they have information that he's using the drug and the officer comes to his door and then he sees an array of drugs, whatever it is. You don't think that's sufficient? I mean, I would draw the distinction that having credit cards in themselves is not illegal. True, but he had tracked down this credit card, I mean, the officer did, and it was pretty clear that it was manufactured, that this defendant was engaging in some sort of credit card fraud, and possibly the manufacturer based on the numbers that he determined. Yes, Your Honor. I think the warrant affidavit, however, itself makes clear how crucial the embossing machine was to actually searching the room. He hadn't done surveillance of the room. Yes, Mr. John was implicated in this credit card transaction, which wasn't consummated. He didn't take anything away from, you know, he would not have any receipts. He would not have any merchandise because it didn't go through, unlike in some other cases, perhaps. However, at ER 56, he says, we believe that John manufactured the credit card in his home, which is where they wanted to search, with the use or assistance of the embossing machine in his home, and that, I believe, is the crucial reasonable nexus. Do you know with certainty how many credit cards were on the floor? It was later found to be 10, seen at the doorway. Found in the room altogether, pursuant to the warrant, was over 200. But in the doorway, when they were counted, it was 10. How many do you think there would have had to be for him to have probable cause? 20? I think 20 would be getting more into the realm of suspicious. If my wallet were open on the floor, you could see 10 cards, but you would not see 20. And as he testified, he never gave a number because he didn't know one. Well, how do you give a number? He put in his police report later, after they had been counted, that there were ultimately 10. The warrant actually said in excess of 15. And taking a step backwards, the district court found that there was no exigency to support those warrantless entries that resulted in the observation of the embossing machine. The district court did exclude some evidence, right? Yes, the embossing machine. Excluded the embossing machine and excluded the photographs? The photographs, which were not used to seek the warrant in any event. Okay, so excluded the embossing machine. So your argument is that there was insufficient probable cause for the warrant and for the arrest because it was based just on the 10 or so credit cards? Not for his arrest for the rouse transaction that happened out in the hallway, but for the warrant once the embossing machine was excised. Yes, Your Honor. And I see I'm into my rebuttal time. Okay. Good morning, Your Honors. May it please the Court. Allison Westfall-Kong for the United States. I'd like to focus on my argument just on the ground that was reached by the district court, that even assuming that the embossing machine was improperly viewed, there was still ample probable cause to support the searches. There's no dispute that there's probable cause that a crime has been committed. Someone who is ultimately identified as the defendant attempts to purchase $1,500 in gift cards with the fraudulent credit card that is in defendant's name. He leaves behind that credit card as well as his driver's license, and the officer subsequently confirms the clerk's suspicion that the card was fraudulent by contacting the bank and confirming that it, in fact, was a fraudulent credit card. And so at that point, there's already probable cause that the defendant has committed a crime. And so I think the other critical fact in the affidavit is that once the officer arrives at the residence in Arcadia, confirms the defendant both lives at the residence and is the person who attempted to use the fraudulent credit card at the Rouse, he actually sees an array of credit cards in the doorway of defendant's bedroom, which is later determined to be ten credit cards. And under the totality of the circumstances, I would argue that this fact, in combination with the crime, gives this court a reasonable belief that there would be evidence of that crime found in defendant's bedroom. My opponent pointed to two cases, Sixth Circuit's decision in Kearney as well as this circuit's decision in Holtzman, and I actually think that those cases support the government's argument in the sense that in both of those cases, there was no direct nexus of the crime to the residence, or in the case of Holtzman, the motel that was ultimately searched. There was certainly probable cause that the defendant was engaged in a crime. In Kearney, it was the passing of counterfeit money, and in Holtzman, he had credit cards in different people's names and was next to somebody who appeared to be engaging in credit card fraud. But there was no direct nexus to the motel in Holtzman and no direct nexus to the residence in Kearney, and the court still found that it would be reasonable to search those locations for evidence of the crime. And so here, we actually have the array of credit cards in defendant's bedroom, so I would argue that that provides the necessary link to search the Arcadia premises. What about the car? What justified the search of the car? I think that it kind of goes with the Kearney and Holtzman decisions that I was just talking about. The only question is, would it be reasonable to search there? And so we certainly have the direct nexus between the bedroom, and I would argue that it would also be reasonable to search in the car. The car is located on the premises. There's no question that it's linked to defendant. He's the registered owner. He'd been cited in it, as revealed in a records check. And I think that it is reasonable to assume that the car was used in this type of offense. After all, you have the defendant committing credit card fraud at a Ralph's supermarket, thus off-site, away from his home. You have credit cards in his home. It's reasonable to assume that the car is kind of the link between the credit cards that are being manufactured in the bedroom and the stores where the credit cards are being used. You know how far away the house was from the Ralph's? This wasn't in the record, but the Ralph's was in South Pasadena. His home is in Arcadia, and I would represent that that would be approximately 13 to 15 minutes by car and would probably take at least an hour. No, I thought his home was in Alhambra. His apartment was in Alhambra. There are two residents that come back to defendant during a records check, and one is in Alhambra and one is in Arcadia, and the defendant is not at the Alhambra residence. So when they go back on January 21st, I believe they find him at the Arcadia premises. I just want to get your view on whether there's sufficient evidence in the record for us to make this decision on whether or not excluding the embossing machine there's sufficient probable cause, or do we need to send this back for any reason? No, I don't believe so because that was actually the ground that was reached by the district court. The district court did exclude the embossing machine from the affidavit, and I believe the district court also replaced the reference to in excess of 15 credit cards with an array of credit cards, and even making those replacements and excisions, the court found that there was sufficient probable cause to support the searches. Did the district court make a finding as to whether or not the warrant-based search was an independent source of the evidence? I don't believe the district court made that direct finding. Does it need to? I think under these circumstances, no, and I would argue that it's because kind of at the point where they're at the apartment and they see the credit cards at the doorway, I don't think there can be any real question that they would have sought a search warrant at that point, and I would distinguish this case. Well, but 10 credit cards isn't that many. I mean, I must have 25 or so in my drawer at home, you know. Certainly, Your Honor. I think there are a couple of facts that are suspicious about the credit cards. They're not in a drawer. They're not in a wallet. They're just kind of lying out, and when you view it in the totality that just six days earlier a fraudulent card was used, I believe that that gives rise to probable cause to search. I think it's also a significant fact that the credit card the defendant uses at the Ralph's is actually in his name, so you wouldn't expect to see credit cards in other names. It appears that this particular scheme … But they wouldn't be able to see that the credit cards were in any particular name, just seeing them on the floor. Certainly, certainly. That's absolutely true. But I guess what I'm saying is it's not necessarily the case that seeing them in other … that you wouldn't even see the cards in other names. It appears that this scheme, defendant was altering or manufacturing cards to be used in his name. And so I would contend that this is different from the Supreme Court's decision in Murray, which kind of talks about the independent source doctrine where the officers enter the warehouse and then see bales of marijuana and subsequently get a search warrant, in the sense that before entering there was no direct indication that there was evidence of the crime in the warehouse. Whereas here, once they see the credit cards in the doorway, you're already at that point where they're going to seek a search warrant because it appears that there's evidence in that location. And as to kind of credit card manufacture, I would argue that there is sufficient evidence of credit card manufacture, both because, as I mentioned, the credit card is actually in defendant's name. So at the point where he makes the purchase or attempts to make the purchase at the Ralphs, you can already draw the inference that he personally manufactured it or that he obtained it from someone else who specifically altered or manufactured it for defendant. So at the point where you see kind of ten credit cards lying on the ground of defendant's bedroom, that gives rise to the inference that he's personally manufacturing them. And even if he's not personally manufacturing them, there would be evidence of credit card manufacture inside of that bedroom because the cards themselves would constitute evidence of credit card manufacture. In your brief, you argue exigent circumstances, and I notice you don't argue that today, and I think that's wise, but are you conceding? I wouldn't say that I'm conceding. I'm not focusing on that. I agree that the kind of easier way, and I think the better argument, is that there's still probable cause. I would just briefly say that I do think this would be a very difficult situation for law enforcement. You essentially have a crime scene confined to a bedroom, and you have a dog running around loose kind of in that crime scene, and the dog was barking and snarling at the officers, and so they really did take a rather limited measure. They didn't try to disable the dog in any way. They just asked the owner to move it across the hallway. Why didn't they just shut the door? I mean, the door to the bedroom, and the dog was in there. Why couldn't they just leave the dog there? I believe that was the finding that the district court made. I guess I would say I think that the officers expected that they would get the search warrant very quickly, and so they would then be in a situation where they, and perhaps other officers, would be entering the room and having to deal with the situation of the dog being there and the dog potentially disrupting evidence. This is a credit card case. There could be paper records, and even the positioning of the evidence could be evidence. Again, I don't want to focus on that. I think that excising the embossing machine, there's still ample probable cause. But under the circumstances, I do believe that the officers' actions were reasonable, even if this court ultimately concludes that they don't rise to the level of an exigency. The court has no further questions. Thank you. Thank you very much. Just a couple of points. First of all, the door actually was shut to the bedroom. After Mr. Jeanne responded to the officer's knock, he came out, put the dog behind him, and shut the door behind him. So he actually was instructed to open a closed door. So as far as exigency, regardless of how big the dog was, and it's in the record that it wasn't very large, the door was closed at the time. Second, should this court reach the independent source issue, we would argue that it fails on both counts, both that the warrant was prompted by what they had seen and that it was presented, the embossing machine was presented to the magistrate. And just to get, again, to make the timeline clear, the officers could not have thought that the warrant was about to show up at any moment because they hadn't even sought it yet. Three of these warrantless entries occurred, at least three, and probably three of the four occurred before they had sought the warrant. First, there was the dog, moving the dog. Second was to obtain the clothing. The third was to open the window and take photos. And the detective testified that the purpose of that was to get photos to use to get the warrant. So, again, they were not thinking that the warrant would show up, they would have to go to the room at any moment because that had not occurred yet. If there are no further questions, I would submit. Thank you very much, counsel. U.S. v. Schwan is. . .
judges: Noonan, Wardlaw, Murguia